THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ROSEMARY MURDOCK,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ROSEMARY SKINNER; and HEALTH & WEALTH DISTRIBUTORS, LLC,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [20] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S OVERTIME CLAIMS**<br><br>Case No. 2:20-cv-00019-DBB-DBP<br><br>District Judge David Barlow |

Rosemary Murdock ("Plaintiff") sued Rosemary Skinner and Health & Wealth Distributors, LLC ("Defendants") to recover unpaid overtime wages under the Fair Labor and Standards Act ("FLSA").[1] Defendants moved for summary judgment on the basis that Plaintiff falls under the administrative exemption to the FLSA or, alternatively, that Plaintiff is only entitled to two years of damages because she has failed to show that Defendants' conduct was willful.[2] Defendants' motion for summary judgment is denied as to the issue of whether Ms. Murdock was an administrative employee and granted as to the issue of whether Ms. Skinner acted willfully.

---

[1] *See* Amended Complaint, ECF No. 6 at ¶¶ 55–59.
[2] Defendant's Motion for Summary Judgment, ECF No. 20 at 2.

## BACKGROUND

In January of 2016, Defendants hired Plaintiff to perform clerical work and assist with Defendants' business.[3] Defendant Skinner is a high-level distributor at ASEA, LLC,[4] a multi-level marketing company in which distributors (or "sponsors") earn more money by recruiting new members (their "downline") who then sell products and attempt to recruit even more members to the company.[5]

The exact nature of Plaintiff's work for Defendants is disputed. Plaintiff testifies that she set up business and personal appointments, set up Zoom calls, bought office materials, drafted emails, and made flight reservations.[6] Defendant Skinner testifies that Plaintiff worked directly with distributors, prepared taxes for the company, marketed and advertised the business, managed social media, and planned and executed networking and training events.[7] In November of 2016, about ten months after she began working for Defendants, Plaintiff enrolled in ASEA as a downline distributor with Ms. Skinner as her sponsor.[8]

Plaintiff alleges that she was an employee and was entitled to overtime pay under the FLSA.[9] In response, Defendants argue that Plaintiff is not eligible for overtime pay because she was an administrative employee exempt from the FLSA and that, even if Plaintiff were an employee, she would not be entitled to three years' worth of damages because she has not shown

---

[3] ECF No. 20, Ex. E at 62:8–13, 68:4–8.
[4] ECF No. 20, Ex. C at ¶ 5.
[5] *See* ECF No. 20, Ex. E at 16–17.
[6] ECF No. 20, Ex. E at 68:4–8, 71:21–24, 72:11–17.
[7] ECF No. 20, Ex. D at ¶ 14.
[8] ECF No. 20, Ex. A.
[9] ECF No. 6 at ¶¶ 55–59.

that Ms. Skinner acted willfully.[10] Defendants move for summary judgment.[11]

## STANDARD

A court may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[12] Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of any party."[13] But the moving party is entitled to summary judgment if "the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[14] Both evidence and reasonable inferences drawn from that evidence are construed in the light most favorable to the nonmovant.[15]

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that employers pay covered employees one-and-a-half times their hourly wage for work in excess of 40 hours each week.[16] But the FLSA carves out several exemptions to the overtime pay requirement, including "any employee employed in a bona fide executive, administrative, or professional capacity."[17] Defendants assert that summary judgment is appropriate because undisputed material facts establish that Ms. Murdock was exempt from FLSA as an administrative employee.[18]

---

[10] ECF No. 20 at 2.
[11] *Id.*
[12] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[14] *Celotex*, 477 U.S. at 323.
[15] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).
[16] 29 U.S.C. § 207(a)(1).
[17] 29 U.S.C. § 213(a)(1).
[18] ECF No. 20 at 2.

A. **Summary judgment is not appropriate as to whether the FLSA administrative exemption applies to Ms. Murdock because there is a genuine dispute of material fact as to her primary duty.**

Although an employee bears the burden of proving that an employer violated the FLSA, an employer that asserts that the employee is exempt from statutory coverage bears the burden of proving that an exemption applies.[19] Exemptions to the FLSA are narrowly construed, and the employer must show that the employee fits "plainly and unmistakably within the exemption's terms" with "clear and affirmative" evidence.[20] The inquiry into exempt status under the FLSA is "intensely fact bound and case specific."[21]

The determination of whether an employee is exempt from the FLSA under the administrative exemption is based on a three-prong test: (1) the employee must be compensated at a rate no less than $684 a week;[22] (2) the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;[23] and (3) the employee's primary duty must "include[] the exercise of discretion and independent judgment with respect to matters of significance."[24] In an FLSA case, a court "must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA protections."[25] An employee's "primary duty" is the "principal, main, major or most important duty that the

---

[19] *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008).
[20] *Id.* (quoting *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995)).
[21] *Bohn v. Park City Grp., Inc.* 94 F.3d 1457, 1461 (10th Cir. 1996) (citations omitted); *see also Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713 (1986) ("[T]he facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed by the courts of appeals pursuant to Rule 52(a) [clearly erroneous standard]. . . .").
[22] 29 C.F.R. § 541.200(a)(1).
[23] *Id.* § 541.200(a)(2).
[24] *Id.* § 541.200(a)(3).
[25] *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012).

employee performs" based on "all the facts in a particular case, with the major emphases on the character of the employee's job as a whole."[26] And the question of which of an employee's job duties is her primary duty is a question of fact rather than an issue of law.[27]

Here, Plaintiff does not contest that her compensation was sufficient to meet the first prong of the administrative-exemption test.[28] Thus, the remaining question is whether there is a genuine dispute of material fact as to the second and third prongs of the test; particularly, summary judgment is only proper if there is no genuine factual dispute regarding Plaintiff's primary duty and that Plaintiff exercised the required discretion and independent judgment.[29]

Defendants assert that Plaintiff's primary duties were directly related to management and operations of Defendants' business and customers, and thus qualify for the administrative exemption.[30] There is no written employment between Plaintiff and Defendants, so the evidence regarding Plaintiff's duties comes almost exclusively from the declaration of Ms. Skinner and deposition of Ms. Murdock. The two paint different pictures of what Ms. Murdock's duties were.

According to Ms. Murdock, she primarily took minutes during meetings, placed calls and wrote emails for Ms. Skinner, purchased office supplies, placed product orders at Ms. Skinner's direction, made both business and personal appointments for Ms. Skinner, made travel reservations for Ms. Skinner's business and pleasure, handled the logistics of away meetings

---

[26] 29 C.F.R. § 541.700(a). The regulation discusses several factors to consider when determining an employee's primary duty, including "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*
[27] *Maestas*, 664 F.3d at 824–25.
[28] ECF No. 26, at 13–14.
[29] *Maestas*, 664 F.3d at 828; Fed. R. Civ. P. 56(a). The court must first determine the employee's primary duty before determining whether that primary duty disqualifies the employee from FLSA protections. *Maestas*, 664 F.3d at 827. If there is a genuine factual dispute as to the first issue, then summary judgment is not appropriate. *Id.*
[30] ECF No. 20 at 11.

(including setting tables, getting food for the meeting participants and Ms. Skinner's personal meals, taking photos, renting and picking up cars, filling out forms, purchasing personal items Ms. Skinner forgot to bring), and sent money to business associates and family members as directed by Ms. Skinner.[31] In other words, that Ms. Murdock's duties were primarily like those of a secretary or personal assistant.

According to Ms. Skinner, "Ms. Murdock's primary duties included working directly with distributors, . . . marketing and advertising for the business, including social media management, managing communications with ASEA affiliates and leaders, planning and executing networking events, determining the amount of product the company will purchase for distributors, planning and executing trainings for distributors, and planning and executing distributorships domestically and abroad."[32] According to Defendants, Ms. Skinner was more like a partner.[33]

Additionally, Ms. Skinner and Ms. Murdock offer conflicting testimony with respect to several different specific job duties. Ms. Skinner testifies that Ms. Murdock "prepar[ed] taxes for the company"[34] and "worked directly with Health & Wealth's accountant . . . to file taxes on behalf of the business,"[35] while Ms. Murdock testifies that she did not "know how to prepare taxes" and simply "sen[t] information requested by [the] CPA on behalf of Ms. Skinner."[36] Ms. Skinner testifies that Ms. Murdock was entrusted with "planning and executing trainings for

---

[31] ECF No. 20, Ex. E at 62:8-16, 68:4-10, 71:25-72:17, 81:1=15.
[32] ECF No. 20, Ex. D at ¶ 14.
[33] ECF No. 20 at 11.
[34] ECF No. 20, Ex. D at ¶ 14.
[35] *Id.* at ¶ 15.
[36] ECF No. 20, Ex. E at 73:21–24.

distributors,"[37] while Ms. Murdock testifies that she would merely "be on a Zoom recording," "greet[] the audience," and "record the training."[38] Ms. Skinner testifies that she would review Ms. Murdock's emails "for grammatical errors only because English is not her first language,"[39] while Ms. Murdock testifies that even though her translation needed to be checked, "everything had to be approved by [Ms. Skinner]," and she was reprimanded for not writing an email "as specified" by Ms. Skinner.[40] Finally, Ms. Skinner testifies that "Ms. Murdock proposed the idea of opening a distributorship in the Dominican Republic . . . and handled all the details and simply asked me to sign off on the decisions after the fact,"[41] while Ms. Murdock testifies that "[Ms. Skinner] opened the Dominican Republic as a country for ASEA" and that it was Ms. Skinner's idea to "open up ASEA in the Dominican Republic."[42]

Plaintiff's primary duty is the "principal, main, major or most important duty that [she] performs" based on "all the facts in a particular case, with the major emphases on the character of [her] job as a whole."[43] In this case, a reasonable fact finder could decide the issue either way, depending largely on the degree to which they credit the testimony from Ms. Murdock and Ms. Skinner. Defendants have not carried their burden to show that all reasonable fact finders would conclude that the administrative portions of Ms. Murdock's job were her primary duties.[44] Because there is a genuine dispute of material fact as to Plaintiff's primary duties, summary judgment is not appropriate.

---

[37] ECF No. 20, Ex. D at ¶ 14.
[38] ECF No. 20, Ex. E at 103:14–104:3.
[39] ECF No. 20, Ex. D at ¶ 21.
[40] ECF No. 20, Ex. E at 99:15–100:8, 113:5–14.
[41] ECF No. 20, Ex. D at ¶ 11.
[42] ECF No. 20, Ex. E at 83:5–13.
[43] 29 C.F.R. § 541.700(a).
[44] *See Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012).

Defendants go on to argue that the second prong of the administrative-employee exemption applies to Ms. Murdock because she "exercised discretion and independent judgment" in her duties.[45] Again, Ms. Skinner and Ms. Murdock offer conflicting testimony on Ms. Murdock's degree of discretion and independent judgment. Ms. Skinner testifies that she "relied on [Plaintiff's] discretion and independent judgment in many respects," and that Plaintiff "handled all the details of setting up a distributorship in the Dominican Republic,"[46] while Ms. Murdock testifies that "[Ms. Skinner] opened the Dominican Republic as a country for ASEA"[47] and that Ms. Murdock's duties on trips to the Dominican Republic were to "rent[] a car,"[48] "have [a hotel] booked,"[49] and do "anything that [Ms. Skinner] requested."[50] Ms. Skinner testifies that when she was travelling Ms. Murdock "performed work when and how she pleased without [Ms. Skinner's] supervision,"[51] while Ms. Murdock testifies that, even when Ms. Skinner was travelling, she "would still be on the calls every morning" and that "[e]verything continued to be the same. . . ."[52] The evidence presented could allow a reasonable fact finder to decide either way on the issue of whether Ms. Murdock exercised the requisite discretion and independent judgment to qualify as an administrative employee. Genuine issues of material fact preclude summary judgment.

---

[45] ECF No. 20 at 11–13.
[46] ECF No. 20, Ex. D at ¶ 11.
[47] ECF No. 20, Ex. E at 83:5–13.
[48] *Id.* at 85:10–14.
[49] *Id.* at 85:20–23.
[50] *Id.* at 87:5–8.
[51] ECF No. 20, Ex. D at ¶ 18.
[52] ECF No. 20, Ex. E at 128:2–13.

### B. There is no genuine dispute of material fact as to whether Ms. Skinner acted willfully.

A claimant under the FLSA is subject to a two-year statute of limitations, except in cases in which an employer acted willfully, in which case a three-year statute of limitations applies.[53] An employee bears the burden of proving that an employer acted willfully to violate the FLSA.[54] Because she bears the burden of proof at trial, Plaintiff must come forward with evidence sufficient to create a genuine of material fact in order to defeat Defendants' motion for summary judgment.[55] For conduct to be "willful" under the FLSA, the defendant must "either know or show reckless disregard for the matter of whether its conduct was prohibited by the statute."[56] Reckless disregard can be shown through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."[57] In the past, courts have found willfulness where a defendant "failed to compensate Plaintiffs for weekly overtime despite being put on notice" by consultation with counsel[58] or where a defendant had settled other claims of a similar nature and thus had notice by virtue of earlier violations.[59]

In support of their motion for summary judgment, Defendants first note that Plaintiff has not provided any evidence that Defendants had ever previously been sued for FLSA violations.[60] Further, Defendants claim that any alleged violation could not have been willful, because they reasonably relied on the ASEA business model, which states that sponsors do not become

---

[53] 29 U.S.C. § 255(a).
[54] *Mclaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).
[55] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[56] *Gilligan v. City of Emporia*, 986 F.2d 410, 413 (10th Cir. 1998) (citing *McLaughlin*, 486 U.S. at 135).
[57] *Mumby v. Pure Energy Servs., Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)).
[58] *Mumby*, 636 F.3d at 1272.
[59] *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334–35 (10th Cir. 1998) (internal quotations omitted).
[60] ECF No. 20 at 15.

employers of their downline.[61] But Plaintiff was not hired solely as part of Defendants' downline. Plaintiff worked for Defendants for about ten months before she ever became part of Defendants' downline.[62] And there is no evidence that the type of work Plaintiff performed for Defendants was of the type that a downline distributor would perform for her sponsor. Put simply, Plaintiff's work for Defendants preceded the sponsor/downline distributor relationship and went far beyond its scope. Therefore, the ASEA distributor model does not preclude a willfulness finding here.

Still, as the party with the burden of proof, Plaintiff must present evidence sufficient to create a genuine dispute of material fact as to whether Defendants willfully violated the FLSA. Plaintiff produced an employment-verification form, apparently signed by Ms. Skinner, that indicated that Ms. Murdock was Ms. Skinner's employee.[63] Defendants deny that Ms. Skinner ever signed the employment verification form, but produce no evidence that the signature is not genuine.[64] Plaintiff argues that Ms. Skinner had Plaintiff receive a 1099 form for independent contractors, and that the discrepancy between the employment-verification form and the 1099 form is sufficient to raise a genuine dispute of material fact as to Ms. Skinner's willfulness.[65] But Plaintiff points to no other evidence that indicates that Defendants "knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the statute." While it is a reasonable inference from the form that Ms. Skinner thought Ms. Murdock was an employee, it does not provide any evidence that Ms. Skinner thought that Ms. Murdock did not fit under the

---

[61] *Id.*
[62] *Id*; ECF No. 20, Ex. A.
[63] ECF No. 26, Ex. 4.
[64] Defendant's Reply in Support of Motion for Summary Judgment, ECF No. 27, at 11.
[65] ECF No. 26 at 21.

exemption. Further, Plaintiff cites no cases in which a court has found willfulness or permitted the issue to go a jury on similar facts. Plaintiff simply has not presented enough evidence to permit a reasonable fact finder to find that Ms. Skinner willfully violated the FLSA. Thus, Defendants' motion for summary judgment is granted as to the issue of Ms. Skinner's willfulness.

Defendants raise one final issue in their motion for summary judgment—that Plaintiff's 2016 overtime claims should be dismissed because they fall outside the FLSA's statute of limitations.[66] But a careful reading of Plaintiff's complaint reveals that she only ever asked for damages within the three-year statute of limitations.[67] Defendants' claim is factually incorrect.

## ORDER

Defendants' motion for summary judgment on Plaintiff's overtime claims is GRANTED in part and DENIED in part.

Signed September 9, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[66] ECF No. 20 at 3.
[67] ECF No. 6 at ¶¶ 48, 57 ("Plaintiff is entitled to recover compensatory damages for all unpaid overtime hours worked during the past three years.") ("The employer's actions were willful, and plaintiff is entitled to recovery of unpaid wages and liquidated damages for up to three years prior to the filing the claim.").